IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MYRA SIDES, *et al.*, ) | |
| ) | |
| PLAINTIFFS, ) | |
| ) | |
| v. ) | CASE NO. 3:10-cv-895-MEF |
| ) | |
| MACON COUNTY GREYHOUND PARK, ) | (WO- Do Not Publish) |
| INC., ) | |
| ) | |
| DEFENDANT. ) | |

## MEMORANDUM OPINION AND ORDER

Several former employees of the Macon County Greyhound Park, Inc. ("Victoryland") bring suit alleging that Victory failed to comply with the requirements of the Worker's Adjustment and Retraining Act of 1988, 29 U.S.C. § 2102, et seq. ("the WARN Act"). This cause is presently before the Court on the Motion to Compel Arbitration of the Claims Asserted by Plaintiffs Myra Sides and Sharon Cobb (Doc. # 19) filed on December 1, 2010 by Victoryland. At issue in this motion, which Plaintiffs have opposed, is whether Myra Sides ("Sides") and Sharon Cobb ("Cobb") are compelled to arbitrate their claims under the WARN Act against their former employer. The Court has carefully considered the submissions in support of and in opposition to this motion and finds that the motion is due to be GRANTED.

## FACTS AND PROCEDURAL HISTORY

On October 22, 2010, Sides, Cobbs, and several other former Victoryland employees (collectively referred to as "Plaintiffs") brought suit against Victoryland. The Plaintiffs seek

class action status for this action. On behalf of themselves and those Victoryland employees who lost their jobs as part of a mass layoff, Plaintiffs seek damages and civil penaltieis because they allege that Victoryland failed to provide notice as the WARN Act requires.

Prior to January of 2010, Victoryland operated a sizable recreational facility in Macon County, Alabama. Victoryland offered live greyhound racing. It is alleged that prior to the reduction of its workforce at issue in this lawsuit Victoryland employed approximately 2,000. Victoryland is an Alabama corporation, but it engaged in interstate commerce by purchasing materials for use in its business from vendors outside of Alabama, by advertising outside of Alabama, and by allowing animals from outside of Alabama to participate in contests at its facility.

Sides and Cobb applied for work with Victoryland in 2004. Cobb executed a Statement of Applicant on March 10, 2004, as part of her application to become a Victoryland employee. Sides executed a Statement of Applicant on March 30, 2004, as part of her application to become a Victoryland employee. The Statement of Applicants contained the following language:

> I agree that any controversy which may cause [sic] arise out of my employment with [Victoryland] will be resolved by arbitration in Birmingham, Alabama, in accordance with the procedures of the American Arbitration Association. I understand that my rights and responsibilities under arbitration as well as those of [Victoryland] are more fully set out in the employee handbook.

*See* Doc. 20. Despite this language in the Statement of Applicant, the Victoryland employee handbook did not contain any information about arbitration. Victoryland hired Cobb and Sides in March of 2004.

Some of Victoryland's employees had employer provided health insurance coverage and other benefits. Due to certain legal problems, Victoryland significantly curtailed its operations. It terminated the employment of many of its employees in January 2010, February 2010, and August of 2010. Plaintiffs were among the Victoryland employees who lost their jobs. On February 26, 2010, Victoryland terminated Sides's employment. She did not receive any advance notice from Victoryland prior to the termination of her employment. In August of 2010, Victoryland terminated Cobb's employment. She did not receive any advance notice from Victoryland prior to the termination of her employment. Plaintiffs allege that they were entitled to a minimum of sixty days' notice prior to the termination of their employment, but that they did not receive it.

On October 22, 2010, Sides, Cobb, and four other former Victoryland employees filed this lawsuit as a putative class action. The lawsuit alleges that Victoryland violated the WARN Act. It seeks: class certification; the statutory penalty for each member of the putative class; pre-judgment interest; post-judgment interest; attorneys' fees; and costs.

Victoryland filed a motion to dismiss which is addressed in a separate opinion. It also filed the instant motion seeking to compel arbitration of the claims of Sides and Cobb. Plaintiffs oppose the motion.

## JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant 28 U.S.C. § 1331 (federal question) because it arises under a federal statute which specifically gives this Court the authority to hear claims under the WARN Act. *See* 29 U.S.C. § 2104(a)(5). The

Court finds adequate allegations to support personal jurisdiction. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## DISCUSSION

Pursuant to the Federal Arbitration Act ["FAA"], a written arbitration "provision in any . . . contract evidencing a transaction involving commerce .. . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (1991). The effect of Section 2 is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S.1, 24 (1983). Section 3 provides for the stay of proceedings in federal district courts when an issue in the proceedings is referable to arbitration. *See* 9 U.S.C. § 3 (1991). Section 4 provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. *See* 9 U.S.C. § 4 (1991); *Boyd v. Town of Hayneville, Ala.,* 144 F. Supp. 2d 1272, 1275 (M.D. Ala. 2001).

The FAA establishes "'a federal policy favoring arbitration.'" *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24 (1983)). Indeed, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Therefore, courts must rigorously enforce agreements to arbitrate. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985). The court must look to the intent of the parties

4

to determine which claims are arbitrable, and in so doing, the court looks to the wording of the arbitration clause and gives all provisions of the contract their full effect. *See Bullock v. United Benefit Life Ins. Co.*, 165 F. Supp. 2d 1259, 1261 (M.D. Ala. 2001).

Section 4 of the FAA allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" to petition the court "for an order directing that such arbitration proceed." 9 U.S.C. § 4. When a court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court is required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id*.

Thus, the issues before this Court are: whether the parties have agreed to arbitrate claims of the sort Cobb and Sides have brought and whether any such agreement to arbitration is unconscionable as a matter of law because of the unavailability of class relief in arbitration. It is well established that arbitration is a creature of contract, and no party can be compelled to submit a dispute to arbitration without having given prior contractual consent to do so. *See AT & T Tech., Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction substantially affecting interstate commerce. In this case, the later is not contested.[1]

---

[1] The FAA "provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause.'" *Citizens Bank v. Alafabco, Inc.,* 123 S. Ct. 2037, 2040 (2003). The record before this Court makes it clear that the dealings between the parties affected interstate commerce. *See, e.g., Pitchford v. AmSouth Bank,* 285 F. Supp. 2d 1286, 1290 (M.D. Ala. 2003). Consequently, the arbitration agreement is within the scope of the

When deciding whether parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts. *Baptist Health Sys., Inc. v. Mack,* 860 So. 2d 1265, 1273 (Ala. 2003). The requisite elements of a contract under Alabama law include: an offer, an acceptance, consideration, and mutual assent to the formation of a contract. *Id.* Assent must be manifested by *something*, and that something is most often a signature; however, ratification may also manifest assent. *Id.* Indeed, the Alabama Supreme Court has previously explained that a signature on a contract functions to show mutuality and assent, but that does not mean that there are no other ways to manifest mutuality and assent. *Id.* (*citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kilgore*, 751 So. 2d 8, 11 (Ala. 1999).

Alabama law allows arbitration agreements between at-will employees and their employers. Employers and their at-will employees may not have an "employment contract" which governs their employment relationship as a whole, but that does not mean that they cannot contractually agree to arbitrate disputes arising out of the employment relationship. In this case counsel for Sides and Cobb appears to conflate employment contracts and narrower arbitration agreements which govern only one aspect of the employer-employee relationship namely, dispute resolution.

Thus, the first real and disputed issue is whether Victoryland has met its burden of proving the existence of a contract calling for arbitration. Victoryland points to the language contained in the Statement of Applicant which both Sides and Cobb executed in order to

---

FAA.

secure employment with Victoryland.  Sides and Cobb contend that the Statement of Applicant does not constitute a contract calling for arbitration for three reasons: (1) Victoryland did not sign the Statement of Applicant and the Statement of Applicant does not impose a obligation to arbitrate upon both the applicant and Victoryland so there is no mutuality of obligation; and (2) the Statement of Applicant is ambiguous both because of a typo which obscures its meaning and because it conflicts with Victoryland's employee handbook.  In the alternative, Cobb and Sides contend that even if there is an agreement to arbitrate in the Statement of Applicant, it should not be enforced because it is unconscionable because it limits class relief and deters enforcement of rights under the WARN Act.

**A.  Is the Statement of Applicant An Enforceable Agreement to Arbitrate**

    **1.  Mutuality of Assent and Consideration**

Victoryland's failure to sign the Statements of Applicant does not mean that the Statements of Applicant do not constitute valid agreements to arbitrate between Victoryland and Sides or Victoryland and Cobb.  As previously explained, Alabama law does not require that both parties to a contract sign it for it to be a binding contract.  Indeed, other evidence of assent to the terms of the agreement are acceptable.  Here, Cobb and Sides both evidenced their assent and agreement by signing the Statements of Applicant which contained an agreement to arbitrate disputes with Victoryland.  Victoryland prepared the written offer of contract which was contained in the Statement of Applicant.  Its decision to hire Sides and Cobb after they signed the Statements of Applicant and is sufficient evidence of its assent and agreement to be bound to the contractual offer it had extended.  *See, e.g., Gadsen*

*Budweiser Distributing Co., Inc. v. Holland*, 807 So. 2d 528, 531 (Ala. 2001) (finding mutuality of obligation existed between employer and at-will employee where employer provided at-will employment to employee after employee accepted employer's offer to enter into an agreement to arbitrate employment disputes). In the circumstances of this case there is also sufficient evidence that Victoryland intended to be bound by the contractual arbitration agreement it extended in the Statement of Applicant.

### 2. Statement of Applicant Contains Error and Is Inconsistency with Handbook

Pointing to one error and one misstatement in the arbitration provision contained in the Statements of Applicant they each signed, Sides and Cobb contend that the agreement is too vague to be enforced. It is not seriously disputed that the Statement of Applicant document is not well drafted. In determining whether a contract is ambiguous, the intent of the parties, as that intent is manifested through the plain language of the contract, guides the court. *See Allied-Bruce Terminix Cos. v. Dobson*, 684 SSO. 2d 102 (Ala. 1995). If the intent of the parties is clear from the face of the complaint, the court must enforce the contract even when the language read literally is nonsensical. *See Sheet Metal Workers' Int'l Ass'n Local 15, AFL-CIO v. Law Fabrication, LLC*, 237 Fed. Appx. 543, 547-48 (11th Cir. 2007). The glaring typo in the first sentence is an obvious error. So obvious that it does not in any way obscure the obvious meaning of the sentence or the nature of the agreement between the parties. Despite the typographical error, it is clear the parties agreed to arbitrate all disputes arising out of the employment of Sides or Cobb with Victoryland. Moreover, the erroneous indication in the Statements of Applicant that the employee handbook contains further

8

information about the rights and responsibilities of Victoryland and its employees regarding arbitration does not render the agreement to arbitrate either vague or unenforceable.

**B. Arbitration Agreement Is Not Void On Public Policy Grounds**

Finally, Cobb and Sides contend that this Court should not order them to honor their contractual agreement to arbitrate their WARN Act claims against Victoryland because the WARN Act embodies a public policy which favors class actions and arbitration precludes them from seeking class relief. The Court does not find the policy argument persuasive, nor is it persuaded that the legal authorities on which Sides and Cobb rely require the result they urge. Nothing in the arbitration agreement is unconscionable. Enforcement of the arbitration agreement does not violate public policy.

## CONCLUSION

The Court finds that the arguments submitted in support of the Motion to Compel Arbitration of the Claims Asserted by Plaintiffs, Myra Sides and Sharon Cobb (Doc. # 19) are well-taken. Accordingly, it is hereby ORDERED that the motion is GRANTED. Sides and Cobb are bound by their contractual agreement to arbitrate any employment dispute with Victoryland, and their claims in this lawsuit fall within the scope of that agreement. The claims of Sides and Cobb, as set forth in the Complaint, must be submitted to arbitration in Birmingham in accordance with the procedures of the American Arbitration Association.

DONE this the 13th day of July, 2011.

    /s/ Mark E. Fuller
    UNITED STATES DISTRICT JUDGE