IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JUDY WEEKES-WALKER, *et al.*,   )<br>                                                       )<br>     Plaintiffs,                             )<br>                                                       )<br>v.                                                  )<br>                                                       )<br>MACON COUNTY GREYHOUND   )<br>PARK, INC.,                                 )<br>                                                       )<br>     Defendant.                           )  | CASE NO.  3:10-cv-895-MEF<br>        [WO – Publish] |

### MEMORANDUM OPINION AND CERTIFICATION ORDER

Plaintiffs filed a single-count class action Complaint (Doc. # 1), alleging that Defendant Macon County Greyhound Park, Inc. ("MCGP") violated the Worker Adjustment and Retaining Act of 1988 ("WARN"), 29 U.S.C. §§ 2101 *et seq*. The case is now before the Court on Plaintiffs' Motion for Class Certification (Doc. # 55), which has been fully briefed (Doc. # 63). For the reasons set forth below, the motion is due to be **GRANTED**.

### I. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

### II. STANDARD OF REVIEW

"A district court must conduct a rigorous analysis of the [R]ule 23 prerequisites before certifying a class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (citation and internal quotation marks omitted). To obtain class certification, a named

plaintiff must: (1) have standing; (2) satisfy each requirement of Rule 23(a) of the Federal Rules of Civil Procedure; and (3) satisfy at least one of the requirements of Rule 23(b). *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008). It is the plaintiff's burden to establish every element of Rule 23 and to generally show that class certification is appropriate. *See Vega*, 564 F.3d at 1267 (citing *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003)).

"Rule 23 establishes the legal roadmap courts must follow when determining whether class certification is appropriate." *Valley Drug Co.*, 350 F.3d at 1187. A class or sub-class may be formed and any person or group of people may represent the class in litigation if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the named representative parties are typical of the claims or defenses of the class; and (4) the named representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *see also Valley Drug Co.*, 350 F.3d at 1187-88. Failure to prove any of the four Rule 23(a) requirements and at least one of the alternative requirements of Rule 23(b) precludes class certification. *Valley Drug Co.*, 350 F.3d at 1188 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615-18 (1997)).

In determining whether these requirements are met, the court must take the allegations in support of certification as true and try to refrain from analyzing the merits of the case. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). "'Although the trial court should

not determine the merits of the plaintiff's claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied.'" *Vega*, 564 F.3d at 1266 (quoting *Valley Drug Co.*, 350 F.3d at 1188 n.15).

### III.  FACTUAL BACKGROUND

Accepting as true the allegations in support of class certification, the Court finds the following facts:

Plaintiffs Judy Weekes-Walker, Mona Thomas, Keyla Exford, and Ritchie L. Stalnaker are former employees of MCGP. MCGP operated a large-scale entertainment complex in Macon County, Alabama, and allegedly was the County's largest employer with approximately 2,000 employees. (Compl. ¶ 8; Mot. for Class Cert. 6.)

Plaintiffs were laid off on one of three dates in 2010. (Compl. ¶ 5.) Plaintiffs Mona Thomas and Ritchie L. Stalnaker were terminated on January 5, 2010, along with approximately 200 or 225 other employees. (Compl. ¶ 11 (225); Mot. for Class Cert. 6 (200); Thomas Aff. (Doc. # 43-21); Stalnaker Aff. (Doc. # 43-6).) Plaintiff Weekes-Walker was terminated on February 4, 2010, along with approximately 1,800 other employees. Finally,

Plaintiff Keyla Exford was terminated on August 8, 2010, along with all 600 (some had been re-hired) of MCGP's remaining employees.[1]  (Compl. ¶ 17; Mot. for Class Cert. 7.)

Plaintiffs allege that MCGP "was required by the provisions of the WARN Act to give notice to all affected employees of a 'mass-layoff' or 'plant closing' a minimum of 60 days prior to the date of termination and failed to give such notice as required by the WARN Act." (Compl. ¶ 38.)  Plaintiffs seek back pay under 29 U.S.C. § 2104(a)(1)(A) and benefits, including incurred medical expenses, under § 2104(a)(1)(B).  Plaintiffs also seek attorney fees pursuant to § 2104(a)(6).

Plaintiffs ask the Court to certify the following class:

> Any employee of [MCGP] who was not given a minimum of 60 days notice of termination and whose employment was terminated during the 2010 calender year as a result of a 'mass layoff' or 'plant closing' as defined in 29 C.F.R. § 639.3 and regulated by federal statute as codified under 29 U.S.C. § 2101 under the [WARN] Act of 1988.

(Mot. for Class Cert. 8.)  The proposed class excludes "[t]he officers and directors of the defendant; any judge or judicial officer assigned to this matter or his or her immediate family; [and] any legal representative, successor, or assign of any excluded persons or entities."  (Mot. for Class Cert. 8.)

---

[1] MCGP disputes some of Plaintiffs' numerical allegations.  Lewis Benefield, MCGP's Chief Operating Officer, presented an affidavit stating that MCGP laid off 93 of its 712 full-time employees on January 5, 2010.  (Benefield Aff. ¶ 4 (Doc. # 63-1).)  MCGP does not make any representations regarding February 4, 2010 or August 9, 2010.  The Court must accept Plaintiff's allegations in support of class certification as true.  *Eisen*, 417 U.S. at 177; *see also Drayton v. W. Auto Supply Co.*, No. 01-10415, 2002 WL 32508918, at *6 (11th Cir. March 11, 2002) (unpublished) ("It . . . is proper to accept the substantive allegations contained in the complaint as true when assessing Rule 23 requirements.").

## IV.  DISCUSSION

A.  <u>Ascertainability</u>

"Although not explicit in Rule 23(a) or (b), courts have universally recognized that the first essential ingredient to class treatment is the ascertainability of the class." *Keller v. Macon Cnty. Greyhound Park, Inc.*, No. 07cv1098, 2011 WL 1085976, at *3 (M.D. Ala. March 24, 2011) (Watkins, J.)  Ascertainability is an "'implied requirement'" of class certification.  *Id.* (quoting *In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006)).  Ascertainability is uncontested by MCGP and Plaintiffs have demonstrated that the proposed class can be identified easily through MCGP's records.  (Mot. for Class Cert. 9.)

B.  <u>The Rule 23(a) Requirements</u>

   *1.   Numerosity*

The first requirement under Rule 23(a) is that the putative class be "so numerous that joinder of all members is impracticable." Fed R. Civ. P. 23(a)(1). "Generally, a class should have no fewer than 21 members and will satisfy the numerosity requirement if it has more than 40." *Martinez v. Mecca Farms, Inc.*, 213 F.R.D. 601, 605 (S.D. Fla. 2002); *see also Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).  MGCP does not dispute that the numerosity requirement has been met, and Plaintiff's allegations are sufficient in that regard.  As stated above, MCGP employed approximately 2,000 people at the start of 2010, and most of those employees were terminated on one of the three dates Plaintiffs allege to be WARN Act violations.  Joinder of hundreds, potentially thousands, of

5

lawsuits in this case is impracticable; therefore, the numerosity requirement is satisfied. Fed. R. Civ. P. 23(a)(1); *see also Valley Drug Co.*, 350 F.3d at 1187-88. Furthermore, as discussed below, this class action lawsuit will be divided into three sub-classes based upon the three layoff dates alleged in the Complaint. Each of those sub-classes individually meets the numerosity requirement.

### 2. *Commonality*

"A class may be certified only if 'there are questions of law or fact common to the class.'" *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting Fed. R. Civ. P. 23(a)(2)). "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." *Id.* (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). "Commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Id.* (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)).

Although seeking certification of a single class, Plaintiffs seek WARN Act damages for three separate layoffs. MCGP argues that "the circumstances surrounding each layoff were very different . . . and present different legal theories and defenses." (Br. in Opposition 8 (Doc. # 63).) The Court agrees with MCGP that each layoff is generally subject to different questions of law and fact. However, the Court also finds that, for the sub-group of individuals within each layoff, there are common questions of law or fact. Thus, the

commonality requirement is not met for the single class proposed by Plaintiffs, but is met for a class action consisting of sub-classes.

### a. January 5, 2010 Layoff

As to the January 5, 2010 layoff, MCGP states that it was "renovat[ing] its North Gaming Station, which was a part of the larger gaming operation at MCGP." (Br. in Opposition 9.) As a result of those renovations, MCGP represents that it "laid off approximately 93 of the 712 full time employees it had at the time." (Br. in Opposition 9; Benefield Aff. ¶ 4.) Thus, MCGP intends to present two defenses: (1) that MCGP was not required to provide notice because the layoff was not a "mass layoff" as defined in the WARN Act, § 2101(a)(3)(B) (at least one-third of full time employees); and (2) that MCGP was not required to provide notice because the layoffs, which were supposedly on account of a temporary closing due to renovation, "were not [reasonably] anticipated [by MCGP] at the time to exceed six months[,]" § 2102(c).

Accordingly, for those employees who were laid off on January 5, 2010, there is a common issue of fact as to whether the number of employees laid off on January 5, 2010, constituted "at least 33 percent of the [full-time] employees . . . ." § 2101(a)(3)(B)(i)(I); *see also* note 1, *supra*. Second, there is also a common question as to the validity of MCGP's § 2102(c) defense. Initially, there is a common question of fact as to whether the January 5, 2010 layoff was announced to be of a duration of six months or less "at its outset." *Id.* Assuming so, there is a common mixed question of law and fact as to whether the extension

7

of the layoff beyond six months was caused by business circumstances "not reasonably foreseeable at the time of the initial layoff." § 2102(c)(1). Finally, there is a common question as to whether notice was given at the time it became reasonably foreseeable that an extension of the layoff beyond six months was required. § 2102(c)(2).

    b.    **February 4, 2010 Layoff**

MCGP intends to argue that the February 4, 2010 layoff "resulted from unforeseeable business circumstances . . . [after] the Governor's Task Force on Gambling [raided] the facilities at MCGP." (Br. in Opposition 10.) Thus, it appears that MCGP will be presenting a defense to Plaintiffs' claims under § 2101(b)(2)(A), which states that "[a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by *business circumstances that were not reasonably foreseeable* as of the time that notice would have been required." *Id.* (emphasis added). For those laid off on February 4, 2010, there will be a common mixed question of law and fact as to whether the circumstances which led to the layoff were reasonably foreseeable.[2]

---

[2] Although the February 4, 2010 layoff is subject to a different set of factual circumstances and legal defenses, there is one common question of law and fact between the January 5 and February 4, 2010 layoffs. Section 2102(d) states that "employment losses for [two] or more groups at a single site of employment . . . which in the aggregate exceed [the] minimum number [to trigger the provisions of the WARN Act], and which occur within any 90-day period shall be considered to be a plant closing or mass layoff unless the employer demonstrates that the employment losses are the result of *separate and distinct actions and causes* and are not an attempt by the employer to evade the requirements of this chapter." *Id.* (emphasis added). This will be an issue of particular importance if the January 5, 2010 layoff, standing alone, does not meet the WARN Act's requirements to be considered a "mass layoff," as discussed above. Despite this single common mixed question of law and fact, the Court will nevertheless create distinct sub-classes for the January 4 and February 5, 2010 layoffs. However,

### c.      August 9, 2010 Layoff

MCGP contends that "[o]n August 9, 2010, MCGP learned that dozens of state troopers were positioned at the interstate exit immediately south of the exit from [MCGP's] facility and that the facility was under constant surveillance by the Governor's Task Force." (Br. in Opposition 13.)  MCGP then laid off its remaining 600 employees because "it was obvious that the Governor's Task Force [again] was prepared to . . . attempt to raid the facility . . . ." (Br. in Opposition 13.)  Like the February 4, 2010 layoff, MCGP intends to argue a defense under the reasonably unforeseeable business circumstances exception of § 2102(b)(2)(A).  However, the objective analysis of unforeseeability will be markedly different based on the set of facts available to MCGP as of August 9, 2010.  Nevertheless, for those laid off on August 9, 2010, there are common questions of law and fact based on MCGP's anticipated defense.

### d.      Sub-Class Treatment Preferable

In summary, there are common questions of law and fact to those individuals who were part of the same layoff. *See Cashman v. Dolce Intern./Hartford Inc.*, 225 F.R.D. 73, 92 (D. Conn. 2004) (stating that "[t]he commonality and typicality requirements are fairly easily met in an action brought under the WARN Act").  At the same time, the material issues of law and fact are very different for class members who were laid off on different dates – excepting the issue of combining the January 5, 2010 and February 4, 2010 layoffs, §

---

it may become necessary or prudent at a later date to combine these two sub-classes. *See* Fed. R. Civ. P. 23(c)(1)(C).

9

2102(d). These two conclusions on the commonality requirement of Rule 23(a) suggest sub-class treatment.

### 3.     *Typicality*

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 679 n.72 (11th Cir. 2010) (quoting *Cooper v. S. Co.*, 390 F.3d 695, 713 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006)); *see also Auslander*, 244 F.3d at 811. "The typicality requirement may be satisfied despite substantial factual differences . . . when there is a 'strong similarity of legal theories.'" *Williams*, 568 F.3d at 1357 (quoting *Auslander*, 244 F.3d at 811).

MCGP argues that "Plaintiffs have not satisfied their burden of demonstrating typicality . . . [because] [t]he Court previously compelled arbitration of the claims asserted by two of the original six named plaintiffs." (Br. in Opposition 15 (citing Doc. # 40).) According to MCGP, this "raises the issue of whether the proposed class representatives are atypical in not having arbitration[ ] agreements." (Br. in Opposition 15.) MCGP's concern in this regard is obviated by simply amending the class definition (or sub-class definitions) to exclude those employees with enforceable arbitration agreements.[3]

---

[3] To the extent that this narrower class or sub-class definition changes the analysis of any of the other requirements for class certification, the Court notes that decertification of the class or

Otherwise, the Court agrees with the named Plaintiffs that their claims are "identical" to the claims of the other members of the respective sub-classes based upon layoff date. (Mot. for Class Cert. 19.); *see also Cashman*, 225 F.R.D. at 92.

### 4.    *Adequacy of Representation*

"The adequacy-of-representation requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Busby*, 513 F.3d at 1323 (quoting *Valley Drug Co.*, 350 F.3d at 1189).

MCGP has not identified, and the Court is not aware of, any substantial conflict of interest between the proposed sub-class representatives and the respective sub-classes as will be defined below. Furthermore, MCGP does not question the adequacy of Plaintiffs' counsel in prosecuting the action.

Rather, MCGP argues that the proposed representative plaintiffs themselves "lack sufficient knowledge and understanding [of the nature of their claims] to fulfill their roles as [adequate] class representative[s] . . . ." (Br. in Opposition 17.)  "A proposed representative's knowledge of the case need not be robust." 1 William B. Rubenstein, *et al.*, *Newberg on Class Actions* § 3.67 (5th ed.); *see also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) (stating that class certification is "properly denied . . . where

---

sub-class is always a possibility. *See* Fed. R. Civ. P. 23(c)(1)(C) (stating that "[a]n order than grants or denies class certification may be altered or amended before final judgment"); *see also Culpepper v. Irwin*, 491 F.3d 1260, 1275 (11th Cir. 2007).

11

the class representatives had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class"). MCGP argues that Plaintiffs Thomas, Weekes-Walker, and Stalnaker are inadequate class representatives because they testified in their depositions that they had no "independent knowledge" of the WARN Act.[4] The Eleventh Circuit has never held that a class representative must have independent knowledge of his or her cause of action. In fact, the majority of courts "have rejected or limited" any supposed requirement of independent knowledge of the legal basis for a claim. 1 *Newberg on Class Actions* § 3.67. Rejecting the so-called "independent knowledge" requirement is especially sound when the cause of action – like the WARN Act – has a narrow application and is generally not well-known by the public at large. The adequacy of representation element of Rule 23(a) has been satisfied.

C.   **Rule 23(b)(3)**

Plaintiffs must satisfy at least one of the alternative requirements of Rule 23(b) in order for the proposed class or sub-classes to be certified. *Valley Drug Co.*, 350 F.3d at 1188

---

[4] On top of having no "independent knowledge" of the WARN Act, MCGP also attempts to represent to the Court that Plaintiffs Thomas, Weekes-Walker, and Stalnaker "[do] not know [anything at all] about the Warn Act . . . ." (Br. in Opposition 19.) As stated above, in determining whether the Rule 23(a) requirements are met, the court must take the allegations in support of certification as true. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). All three Plaintiffs in question submitted Declarations (Docs. # 55-2, 55-3 & 55-5) stating that they had reviewed the Complaint, which is replete with references to the WARN Act. Contrary to MCGP's arguments in its brief, the deposition testimony of Plaintiffs Weekes-Walker and Stalnaker do not support MCGP's contention that they do not know anything at all about the WARN Act. And although Plaintiff Thomas testified in her deposition that she had "never heard of the [WARN] Act[,]" (Thomas Dep. 42 (Doc. # 63-5)), her deposition testimony as a whole reveals that she has at least an elementary knowledge of the nature of her claims.

(citing *Amchem*, 521 U.S. at 615-18); *see also Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1189-90 (11th Cir. 2009). Plaintiffs have chosen to rely on Rule 23(b)(3), asserting that common questions of law or fact predominate and that the class action is superior to other methods of proceeding in the case. (Br. in Support 22-24.)

### 1. *Common Issues Predominate*

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . monetary relief." *Babineau*, 576 F.3d at 1191 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)). "On the other hand, common issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'" *Id.* (quoting *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996). "Certification is inappropriate if the 'plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims.'" *Id.* (quoting *Klay*, 382 F.3d at 1255). "The predominance inquiry requires an examination of 'the claims, defenses, relevant facts, and applicable substantive law,' . . . to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." *Id.* (quoting *Klay*, 382 F.3d at 1254).

As discussed above in the commonality inquiry of Rule 23(a)(2), there are questions of fact and law common to the class. However, "the predominance criterion is far more demanding [than Rule 23(a)(2)'s commonality requirement]." *See Williams*, 568 F.3d at 1357 (quoting *Amchem*, 521 U.S. at 623-34). Despite the more rigorous standard, the common questions of fact and law recited above as to each of the three layoff dates will predominate in this litigation. Indeed, courts have noted that "[t]he WARN Act contemplates enforcement by class action." *Butler-Jones v. Sterling Casino Lines, L.P.*, No. 6:08cv1186, 2008 WL 5274384, at *3 (M.D. Fla. Dec. 18, 2008) (citing 29 U.S.C. § 2104(5)); *see also Cashman*, 225 F.R.D. at 92; *Finnan v. L.F. Rothschild & Co., Inc.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989) ("The WARN Act seems particularly amenable to class litigation.").

However, MCGP argues that because Plaintiffs seek damages for incurred medical expenses (Compl. ¶ 39), "damages claims will . . . require individualized evidence to establish both liability [for] and the amount of any [such] damages . . . ." (Br. in Opposition 22.) The Eleventh Circuit has held that "'the presence of individualized damages issues does not *prevent*'" certification of a Rule 23(b)(3) class. *Sacred Heart*, 601 F.3d at 1178 (quoting *Klay*, 382 F.3d at 1259). In providing guidance regarding the effects of individualized damages on certification of Rule 23(b)(3) classes, the Eleventh Circuit has stated that "[i]ndividualized damages issues are of course least likely to defeat predominance 'where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical method[ ].'" *Sacred Heart*, 601 F.3d at 1179 (quoting *Klay*, 382 F.3d

at 1259-60). In so saying, the Eleventh Circuit left the door open to certification of a Rule 23(b)(3) class where individualized damages are not subject to determination based upon a class-wide methodology, but the more common issues surrounding liability nevertheless predominate. "The relevant inquiry, however, is still whether questions of 'liability to the **class** . . . predominate[ ] over . . . individual issues relating to damages[.]'" *Id.* (quoting *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003)). Indeed, "there are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials . . . ; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." 2 *Newberg on Class Actions* § 4:25.

In this case, the common issues regarding liability predominate over any individualized damages issues that may arise based upon incurred medical expenses for a limited number of the class members. Furthermore, other courts have certified Rule 23(b)(3) class actions claiming damages for incurred medical expenses under the WARN Act. *See, e.g., Georigi v. Recon Auto. Remanufacturers*, No. 07cv5509, 2009 WL 1312607 (E.D. Pa. May 7, 2009). Although the Court need not decide, for the moment, how to proceed with respect to damages, it does note that it favors the first three options recited above.

15

### 2.     *Superiority of the Class Action*

"The second prong of Rule 23(b)(3) requires a court to determine whether 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Sacred Hearth Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183 (11th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)). "The focus of this analysis is on the 'relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Id.* at 1183-84 (quoting *Klay*, 382 F.3d at 1269). "As a result, the predominance analysis has a 'tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims,' both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability." *Id.* (quoting *Klay*, 382 F.3d at 1269).

The number of potential class members makes other methods, such as joinder or consolidation, impractical in this case. Furthermore, the predominance of factual and legal issues makes the class action – with sub-classes and a method for adjudicating individualized damages claims – the most desirable vehicle for adjudicating the WARN Act claims. *See Sacred Heart*, 601 F.3d at 1184. Class action is a superior method to other methods of adjudication in this case.

## V. CONCLUSION

Accordingly, it is ORDERED:

(1)     Plaintiffs' Motion for Class Certification (Doc. # 55) is GRANTED;

(2)     The named Plaintiffs Mona Thomas and Ritchie L. Stalnaker are designated as class representatives of the following Rule 23(b)(3) sub-class, hereinafter referred to as the "January 5, 2010 Sub-class":

> All employees of Defendant Macon County Greyhound Park, Inc. (a.k.a. VictoryLand) who were not given a minimum of sixty (60) days notice of termination and whose employment was terminated on or about January 5, 2010 as a result of a "mass layoff" or "plant closing" as defined under the Workers Adjustment and Retaining Act of 1988, 29 U.S.C. §§ 2101 *et seq*.
>
> Said class excludes the officers and directors of Defendant Macon County Greyhound Park, Inc. (a.k.a. VictoryLand), anyone who has had a similar claim previously adjudicated or resolved, anyone who has entered into an enforceable arbitration agreement with Defendant that encompasses this claim, judicial officers of the United States, and counsel for the parties in this action.

(3)     The named Plaintiff Judy Weekes-Walker is designated as class representative of the following Rule 23(b)(3) sub-class, hereinafter referred to as the "February 4, 2010 Sub-class":

> All employees of Defendant Macon County Greyhound Park, Inc. (a.k.a. VictoryLand) who were not given a minimum of sixty (60) days notice of termination and whose employment was terminated on or about February 4, 2010 as a result of a "mass layoff" or "plant closing" as defined under the Workers Adjustment and Retaining Act of 1988, 29 U.S.C. §§ 2101 *et seq*.
>
> Said class excludes the officers and directors of Defendant Macon County Greyhound Park, Inc. (a.k.a. VictoryLand), anyone who has had a similar claim previously adjudicated or resolved, anyone who has entered into an

enforceable arbitration agreement with Defendant that encompasses this claim, judicial officers of the United States, and counsel for the parties in this action.

(4)     The named Plaintiff Keyla Exford is designated as class representative of the following Rule 23(b)(3) sub-class, hereinafter referred to as the "August 9, 2010 Sub-class":

All employees of Defendant Macon County Greyhound Park, Inc. (a.k.a. VictoryLand) who were not given a minimum of sixty (60) days notice of termination and whose employment was terminated on or about August 9, 2010 as a result of a "mass layoff" or "plant closing" as defined under the Workers Adjustment and Retaining Act of 1988, 29 U.S.C. §§ 2101 *et seq*.

Said class excludes the officers and directors of Defendant Macon County Greyhound Park, Inc. (a.k.a. VictoryLand), anyone who has had a similar claim previously adjudicated or resolved, anyone who has entered into an enforceable arbitration agreement with Defendant that encompasses this claim, judicial officers of the United States, and counsel for the parties in this action.

(5)     The sub-classes are certified with respect the following cause of action:

Any claims for damages under the WARN Act, 29 U.S.C. §§ 2101 *et seq.*, against Defendant Macon County Greyhound Park, Inc. (a.k.a. VictoryLand).

(6)     Attorneys Charles A. Hardin, David A. Hughes, David L. Selby, II, Philip Dale Segrest, Sr., and Robert Simms Thompson are designated as class counsel.

DONE this 15th day of March, 2012.

                                                   /s/ Mark E. Fuller
                                        UNITED STATES DISTRICT JUDGE