IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JUDY WEEKES-WALKER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:10-cv-895-WKW-WC |
| | ) | |
| MACON COUNTY GREYHOUND | ) | |
| PARK, INC. (a/k/a Victory Land), | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court are several post-judgment motions and briefs filed by the Plaintiff Class, Defendant, and a non-party.  On December 9, 2014, the District Judge entered an Order (Doc. 190) referring several matters to United States Magistrate Judge Charles S. Coody, including the following: (1) Defendant's Motion to Quash or, in the Alternative, to Stay Writ of Garnishment (Doc. 177); (2) Plaintiffs' Amended Motion to Join Patricia McGregor as Party Defendant (Doc. 183); (3) Defendant's Motion to Stay Motion to Join Patricia McGregor as a Party Defendant and Motion for Writ of Execution on Fraudulently Conveyed Assets (Doc. 186); and (4) Plaintiffs' Verified Application for Writ of Execution (Doc. 189).  Subsequently, Judge Coody entered an Order (Doc. 194) instructing the parties to file any further responses in support or opposition to those matters pending before him.  Plaintiffs filed an additional brief in support of their various filings.  *See* Pl.'s Br. (Doc. 195).  On March 23, 2015, this matter was reassigned to the undersigned Magistrate Judge.  On July 14, 2015, the undersigned conducted a status hearing with counsel for all parties and non-party Patricia McGregor in attendance.  Pursuant to the undersigned's direction at the hearing, counsel for Patricia McGregor filed a brief (Doc. 203) on behalf of Mrs. McGregor in which she joined in Defendant's request that this court stay

1

Plaintiffs' writ of garnishment, motion for writ of execution, and motion to add her as a party defendant. Plaintiffs then filed a response (Doc. 205) in opposition to Mrs. McGregor's brief. All of these matters are before the undersigned and are ripe for decision or recommendation to the District Judge. For the reasons that follow, the undersigned RECOMMENDS that Defendant's Motion to Stay (Doc. 186) be granted, and that this court abstain from adjudicating Plaintiffs' claim that certain assets of Defendant were fraudulent transferred to Mrs. McGregor.

## I.  BACKGROUND

This case was filed nearly five years ago, and a final judgment (Doc. 168) was entered more than one year ago. The particulars of the claims brought by Plaintiffs and the outcome of same are not necessarily germane to the matters presently before the court. It is sufficed for present purposes to note that Plaintiffs are a class of former employees of Defendant who brought suit pursuant to the Worker's Adjustment and Retraining ("WARN") Act, 29 U.S.C. § 2101, *et seq.*, after a series of "mass layoffs" or "plant closings" at Defendant's electronic gaming facility, Victoryland, in 2010. Final Judgment was entered in favor of Plaintiffs on July 22, 2014, in the amount of two million seven hundred thirty-four thousand eight hundred fifty-one dollars and 63/100 ($2,734,851.63), with said amount to include Plaintiffs' monetary judgment, attorneys' fees, costs, and interest. Final Judg. (Doc. 168) at 1.

On October 23, 2014, Plaintiffs filed with the Clerk of Court a Verified Application for Writ of Garnishment (Doc. 169) seeking to have garnished from the garnishee, Lower Tallapoosa Timber, any debt or effects owed or possessed by the garnishee for Defendant. On October 27, 2014, the Writ of Garnishment (Doc. 170) was issued by the Clerk and it was served on Lower Tallapoosa Timber on November 5, 2015. *See* Return of Service of Writ of Garnishment (Doc. 173). On November 12, 2014, Lower Tallapoosa Timber filed its Answer

(Doc. 175) to the writ of garnishment, disclosing that it has in its possession non-exempt property belonging to the Defendant and consisting of "timber stumpage."[1]

On November 12, 2014, Plaintiffs filed, under seal, their initial "Motion to Join Patricia McGregor as Party Defendant and Motion for Writ of Execution on Fraudulently Conveyed Assets" (Doc. 174-1).   In the motion, Plaintiffs allege that Defendant "made conveyances involving real and personal property in anticipation" of the judgment obtained by Plaintiffs, that such "conveyances are in violation of Alabama's Fraudulent Transfer Act[,]" and that this court "may levy execution on the asset transferred or its proceeds" pursuant to Alabama law.  *Id.* Plaintiffs' Verified Application for Writ of Execution further (Doc. 174-2) sought execution on several items of personal and real property said to be in the possession of Defendant.   The following day, on November 13, 2014, Mrs. McGregor filed a Complaint for Declaratory Judgment (Doc. 177-1) in the Circuit Court of Macon County, Alabama, in which she describes a number of loan transactions she made to benefit Defendant in return for a promissory note which was secured by a mortgage executed by Defendant in her favor on September 27, 2012, and recorded in Macon County Probate records on February 5, 2013.  In her state court action, Mrs. McGregor requests that the state court declare that her mortgage is a valid, enforceable lien on the subject property owned by Defendant, and that, under Alabama law, her mortgage primes the judgment obtained by Plaintiffs in this action because the Certificate of Judgment was not filed by Plaintiffs in Macon County until October 30, 2014.

Subsequently, on November 18, 2014, Defendant filed its Motion to Quash, or in the Alternative, to Stay, Writ of Garnishment (Doc. 177), contending that the Writ of Garnishment to

---

[1]   Notably, the Answer does not indicate a dollar amount or valuation of the "timber stumpage" held by Lower Tallapoosa Timber.  Nor, as best the undersigned can tell, do any of the parties, or non-party, indicate precisely what is at stake, in concrete monetary terms, in the Writ of Garnishment issued to Lower Tallapoosa Timber.

Lower Tallapoosa Timber should be quashed because the prior recording of Mrs. McGregor's mortgage *vis a vis* Plaintiffs' judgment gives her priority under Alabama law.  In the alternative, Defendant contends that, in light of Mrs. McGregor's pending state court action, this court should stay the Writ of Garnishment and abstain from deciding any issues surrounding the validity or priority of Mrs. McGregor's mortgage pursuant to the principles articulated by the Supreme Court in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).  The various briefs and procedural developments already described above followed.[2]

## II.    DISCUSSION

As a preliminary matter, the court addresses its jurisdiction to consider this matter. Neither Defendant nor Mrs. McGregor appear to argue that the court lacks jurisdiction to consider the various post-judgment enforcement measures brought by Plaintiffs, including their claim that Mrs. McGregor was the recipient of one or more fraudulent transfers by Defendant. Thus, as Plaintiff argues, and as the undersigned acknowledged at the status hearing in this matter, subject to some conditions, the court maintains such ancillary jurisdiction as is necessary to enforce its judgment, including the authority to consider in a supplementary proceeding whether a fraudulent transfer should be avoided.  *See, e.g., Peacock v. Thomas*, 516 U.S. 349, 356-58 (1996) ("[W]e have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of

---

[2]    In addition to the writ of garnishment served on Lower Tallapoosa Timber, the District Judge has referred Plaintiffs' Verified Application for Writ of Execution (Doc. 189), which was filed on December 9, 2014.  In the application, Plaintiffs' request that the court levy execution upon several items of personal property and a parcel of real property said to be in the possession of Defendant.  Because Plaintiffs are seeking to execute upon an aircraft which was pledged as security for a loan Mrs. McGregor extended to Defendant on August 20, 2013, and said loan has not yet been satisfied by Defendant, Mrs. McGregor has amended her state court complaint "to seek a declaration that the Aircraft Security Agreement is a valid, enforceable lien on the Aircraft which primes the Plaintiffs' judgment."  Def.'s Mot. To Stay (Doc. 186) at 3.  Accordingly, the validity of the Aircraft Security Agreement, and Plaintiffs' claim that such is the product of a fraudulent transfer, is before this court in the same fashion as is Mrs. McGregor's mortgage on the property subject to Plaintiffs' writ of garnishment.

federal judgments—including . . . the prejudgment avoidance of fraudulent conveyances."). Of course, this ancillary jurisdiction is not without limits. The court is not free to entertain a supplementary proceeding with the intended effect of bringing "a new lawsuit to impose liability for a judgment on a third party" that was not a party of the lawsuit resulting in the judgment already entered by the court. *Id.* at 359. *See also Nat'l Maritime Servs., Inc. v. Straub*, 776 F.3d 783, 786-87 (11th Cir. 2015) ("[T]he district court had ancillary jurisdiction over this supplementary proceeding because National Maritime sought to disgorge Straub of a fraudulently transferred asset, not to impose liability for a judgment on a third party."). Thus, any supplementary proceeding instituted by Plaintiffs with the aim of imposing liability on Mrs. McGregor is limited to the value of any interest which was fraudulently transferred to her by Defendant, and may not result in personal liability for Mrs. McGregor for any unsatisfied amount of the judgment in excess of any purported fraudulent transfer for her benefit. *Id.* at 787. Plaintiffs acknowledge this reality and maintain they "are not seeking to impose personal liability on Mrs. McGregor," but are instead only seeking to "obtain satisfaction of their judgment from assets that belong to the defendant." Pls.' Resp. (Doc. 181) at 4.

An additional limitation on the court's ancillary jurisdiction in enforcing its judgment by way of execution is that the "procedure of execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located[.]" Fed. R. Civ. P. 69(a)(1). Thus, any supplementary proceeding brought by Plaintiffs and adjudicated by this court must comport with the procedures applicable to same under Alabama law. Although courts have opined that Rule 69 is not meant to "put the judge into a procedural straightjacket whether of state or federal origin[,]" *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993), this court must generally observe and follow the

procedures established under Alabama law, including particularly the Alabama Fraudulent Transfer Act, Ala. Code § 8-9A-1, *et seq.*, in any supplementary proceeding brought by Plaintiffs for the purpose of avoiding supposedly fraudulent transfers by Defendant in anticipation of the judgment entered in this case.

"Straightjacketed" or not, Circuit precedent makes clear that state law pertaining to ancillary proceedings to enforce a judgment is vital to determining how this court may proceed in this area. For example, Florida law plainly permits a judgment creditor to initiate a supplementary proceeding and implead a supplemental defendant for purposes of challenging a supposedly fraudulent transfer to that party. *See, e.g., Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1496 n.22 (11th Cir. 1997) ("Florida Statute 56.29 sets forth the procedures for impleading supplemental defendants. Under decisional law interpreting 56.29, the two jurisdictional prerequisites for supplementary proceedings are (1) an unsatisfied writ of execution, and (2) an affidavit averring that the writ is valid and unsatisfied along with a list of persons to be impleaded.") (internal citation and quotation omitted). As such, federal courts have repeatedly applied Florida law in supplementary proceedings challenging supposedly fraudulent transfers under Rule 69. *See, e.g., Straub*, 776 F.3d 786-88.

On the other hand, where state law is less clear about the exact procedures to be followed under state law, federal courts are more guarded in their application of Rule 69. *See, e.g., Liberty Mut. Ins. Co. v. C-Staff, Inc.*, 280 F.3d 1337, 1339-40 (11th Cir. 2002) (finding that Georgia law "does not expressly authorize the commencement of supplementary proceedings against third-parties for the enforcement of a judgment" and certifying appropriate question to the Georgia Supreme Court).[3] Although it appears the judgment creditor in *C-Staff* was

---

[3] For what it is worth, the Supreme Court of Georgia ultimately determined that Georgia law does not permit a judgment debtor to implead and hold liable persons who were not parties to the judgment. *C-*

attempting to hold the putative third party defendants personally liable for the judgment entered against C-Staff, the lack of clarity about Georgia law discussed in that case is consequential even in cases where, as here, the judgment creditor seeks only to impose liability up to the amount of any fraudulently transferred interest to the third party. *See Reyes-Fuentes v. Shannon Produce Farm, Inc.*, No. 6:08-cv-059, Order (Doc. 73), 2012 WL 3562399, *4-*6 (S.D. Ga. Aug. 13, 2012) (finding that, although plaintiffs were not seeking to hold a wife of a party defendant, who allegedly benefitted from a fraudulent transfer by the defendant, personally liable for the judgment, "Georgia law does not statutorily provide for supplementary proceedings in which motions and complaints challenging fraudulent conveyances may be raised . . . [and that the] proper procedure appears to be the filing of a new complaint seeking the avoidance of the fraudulent conveyance along with other remedies.").[4]

Given all of the above, while more than satisfied that a federal court may, as a general matter, exercise ancillary jurisdiction over supplementary proceedings to enforce a judgment, including those seeking to avoid a fraudulent transfer, the undersigned has some reservations about whether the court may do so in this specific instance and what are the specific procedures

_____

*Staff, Inc. v. Liberty Mut. Ins. Co.*, 275 Ga. 624,625-26, 571 S.E.2d 383, 384-85 (Ga. 2002). Instead, the Court held, " a judgment-creditor in Georgia must initiate a civil action against those it seeks to hold responsible for satisfying the debt by following the procedures set forth in the Civil Practice Act, which requires a complaint to be filed and the defendants to be served with process." *Id.*, 275 Ga. at 626, 571 S.E.2d at 385.

[4]   The plaintiffs in *Reyes-Fuentes* "filed a post-judgment complaint to void an allegedly fraudulent transfer from Defendant Ricardo Gaspar to his wife, Glenda Caspar." 2012 WL 3562399, *1.   That document, styled "Plaintiffs' Complaint for Fraudulent Transfer" was in the form of a third-party complaint, succinctly alleging the court's jurisdiction, identifying all parties, and presenting detailed, separately numbered factual allegations about the alleged fraudulent transfer as well as the specific provisions of Georgia law violated by the alleged transfer. *See Reyes-Fuentes*, No. 6:08-cv-059, Third Party Complaint (Doc. 59, filed Feb. 7, 2012).  Although the District Court in *Reyes-Fuentes* determined that Georgia law did not permit a supplementary proceeding to litigate issues of alleged fraudulent conveyances to third parties, because the post-judgment complaint otherwise complied with Georgia law concerning filing and service of civil complaints, the court determined it would "be inefficient to order Plaintiffs to re-file their fraudulent transfer complaint" and therefore directed the Clerk of Court to "open a new case for the adjudication of Plaintiffs' complaint." 2012 WL 3562399, *6.

to be applied under Alabama law.  In particular, the undersigned is concerned with whether Alabama law permits a judgment creditor to bring a supplementary proceeding challenging a supposedly fraudulent transfer to a non-party, or if such a party is required by Alabama law, as in Georgia, to bring a separate civil action for fraudulent transfer against such third party.  As best the court can tell, Plaintiffs have presented no authority for their implicit proposition that Alabama law permits what they are trying to do in this case.  Plaintiffs appear to believe that it is as simple as filing a motion to "add" or "join" Patricia McGregor as a party defendant, cause the court to find (presumably after some sort of hearing before a duly authorized finder of facts) that the mortgage and security interest given to her were fraudulent, and proceed to order execution on Defendant's assets "free and clear of any claims of Mrs. McGregor."  *See* Pls.' Am. Mot. (Doc. 183) at 6-7; Pls.' Br. (Doc. 195) at 14.  However, again, there are no citations to Alabama statutory or decisional law confirming that, indeed, this is the procedure in Alabama.  Elsewhere, Plaintiffs have argued that they "requested that Mrs. McGregor be added as a party to this litigation only to satisfy the requirements of due process[,]" Pls.' Br. (Doc. 205) at 6, but, again, Plaintiffs cite to no law establishing that this is all Alabama law, or even "due process," requires. As with the Georgia law discussed in *C-Stop*, *supra*, nothing in the discrete provisions of the Alabama Fraudulent Transfer Act appears to address this question.[5]  Perhaps there is authority existing somewhere in Alabama statutes, rules, or cases establishing the propriety of Plaintiffs' efforts in this court, but it is incumbent upon them to present that authority to the court when asking it to exercise its ancillary jurisdiction over a state-law-controlled execution proceeding

---

[5]  The Act merely provides, at Ala. Code § 8-9A-7(b), that "[i]f a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds."  Plaintiffs have not cited, and the court is unaware of, any Alabama case interpreting the Act in a fashion similar to Florida's law, as discussed in *Straub* and *General Trading Inc.*, *supra*.

under Rule 69.[6]   Accordingly, the undersigned is not entirely satisfied that Plaintiffs have sufficiently instituted supplementary proceedings, in compliance with Alabama law, seeking to set aside any supposedly fraudulent transfer to Mrs. McGregor.

In sum, while the court is undoubtedly vested with some ancillary jurisdiction over post-judgment matters seeking to enforce its judgment, such jurisdiction is not without limits and, in the specific circumstance in which Plaintiffs presently invoke it, it must be exercised with fidelity to the procedures which would be available to Plaintiffs under Alabama law.  With the reservations described above, the undersigned assumes for purposes of this Recommendation that it may exercise jurisdiction as urged by Plaintiffs.  However, distinct from the question of whether this court may exercise jurisdiction in this specific instance, the filings by the parties raise the issue of whether this court should exercise jurisdiction in this instance.  To this end, the undersigned turns to Defendant's argument that, even if this court may exercise jurisdiction, it should abstain from deciding the matters before it pursuant to the *Colorado River* doctrine.

The Eleventh Circuit has described the abstention doctrine of *Colorado River*, and particularly the judiciousness with which it is to be applied, as follows:

---

[6]   As discussed above, this is not merely an academic question.  Rather, it determines whether, and how, the court should proceed.  As recognized in *Straub*, Florida law appears to permit a supplementary proceeding to impose liability on a third party where the judgment creditor seeks only to recover "fraudulently transferred asset from a third party."  *See* 776 F.3d at 788.  However, as discussed in the *C-Stop* cases and *Reyes-Fuentes*, Georgia law does not appear to authorize such proceedings and, instead, a new, separate proceeding alleging a fraudulent transfer must be brought against the transferee, even where, as here, the judgment creditor seeks to recover only the amount of the supposedly fraudulent transfer and does not seek to hold the third party personally liable for the judgment entered against the defendant.  If Alabama law is like that of Florida, then the court's exercise of jurisdiction as requested by Plaintiffs does not appear problematic.  If, however, Alabama's law is more akin to Georgia's, then the court must assess whether Plaintiff's "Amended Motion to Join Patricia McGregor as Party Defendant" (Doc. 183) suffices under Alabama law as a complaint for purposes of bringing a cause of action for fraudulent transfer as to Mrs. McGregor, as the district court found in *Reyes-Flores*.  Furthermore, even if Plaintiffs' "Amended Motion" is sufficient for that purpose, it does not appear that the "Amended Motion" was served upon Mrs. McGregor by Plaintiffs.  *See* Cert. of Serv. (Doc. 183) at 8. Notwithstanding any lack of service on Mrs. McGregor, her attorneys have entered limited appearances in this court, as directed by the undersigned, for purposes of filing her brief in support of Defendant's motion to stay proceedings.

In *Colorado River Water Conservation District v. United States*, the Supreme Court held that a federal court could abstain from a case if (1) a parallel lawsuit was proceeding in state court, and (2) judicial-administration reasons so demanded abstention. 424 U.S. 800, 818–20 (1976). Since the general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter" in federal court, and since the federal courts have a virtually unflagging obligation to exercise their jurisdiction, *Colorado River* abstention applies in exceptional circumstances. *Id.* at 817–18 (internal quotation marks omitted). "Only the clearest of justifications" merits abstention. *Id.* at 819. As the Supreme Court explained, and as this Court has repeatedly cautioned, abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813 (quoting *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)); *Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1331 (11th Cir.2004); *see also Met. Life v. Lockette*, 155 F.3d 1339, 1341 (11th Cir.1998) ("Abstention from the exercise of federal jurisdiction is the exception, not the rule."). And while abstention as a general matter is rare, *Colorado River* abstention is particularly rare, "permissible in fewer circumstances than are the other abstention doctrines." *Ambrosia Coal*, 368 F.3d at 1331. Thus, we have cautioned that "dismissal of an action in deference to parallel state proceedings is an extraordinary step that should not be undertaken absent a danger of a serious waste of judicial resources." *Noonan S., Inc. v. Cnty. of Volusia*, 841 F.2d 380, 383 (11th Cir.1988); *see also First Franklin Fin. Corp. v. McCollum*, 144 F.3d 1362, 1364 (11th Cir.1998) (per curiam) ("[D]ismissal is warranted in light of a concurrent state court action only when a balancing of relevant factors, heavily weighted in favor of the exercise of jurisdiction, shows the case to be exceptional." (internal quotation marks omitted)).

*Jackson-Platts v. Gen. Electric Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013). So, in order for *Colorado River* abstention to apply, there must be a parallel state court proceeding and the court must consider whether a number of "judicial administration" factors warrant abstention in deference to the parallel state court proceeding.

The "judicial administration" factors relevant to whether a federal court should abstain to a parallel state court proceeding include the following: "(1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights."

*Ambrosia Coal*, 368 F.3d at 1331. "No single factor is dispositive, and [a federal court is] required to weigh the factors with a heavy bias favoring the federal courts' obligation to exercise the jurisdiction that Congress has given them." *Jackson-Platts*, 727 F.3d at 1141. Nevertheless, where the federal court finds it to be sufficiently compelling or extraordinary, "[o]ne factor alone can be the sole motivating reason for the abstention." *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004). *See also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983) (noting that in *Colorado River* itself, the Supreme Court's approval of abstention was predicated on the desire to avoid piecemeal litigation).

The undersigned first considers whether Mrs. McGregor's state court declaratory judgment action is a parallel proceeding. The court must determine whether the proceedings "involve substantially the same parties and substantially the same issues." *Ambrosia Coal*, 368 F.3d at 1330. Defendant asserts that "Plaintiffs' proposed fraudulent conveyance claim against Mrs. McGregor and their motion for writ of execution on the Mortgaged Property and the Aircraft present the identical issues, as the Plaintiffs are entitled to such relief only if the Mortgage and Aircraft Security Agreement are invalid." Def.'s Mot. To Stay (Doc. 186) at 4. Without ever explicitly discussing the requirements of *Colorado River* abstention, Plaintiffs appear to assert that Mrs. McGregor's state court action is not a parallel proceeding.

> The issue of whether or not the mortgage and security interest claimed by Mrs. McGregor is a fraudulent conveyance is not pending in any court other than this Court. After the Class attempted to execute against the assets of MCGP, attorneys for Mrs. McGregor filed her lawsuit in the Circuit Court of Macon County, Alabama, purportedly to determine the **priority** of her mortgage with regard to the Class' judgment. That litigation does not raise the issue of whether or not her claim is a fraudulent conveyance. MCGP is not even a party to that lawsuit. MCGP made the fraudulent conveyances of assets that it still controls, and Mrs. McGregor's lawsuit only delays this Court from holding that the mortgage and security interest are fraudulent conveyances (due to be disregarded by this Court) and executing on MCGP's assets.

11

Pls.' Br. (Doc. 205) at 6 (emphasis in original).

To the extent Plaintiffs are indeed arguing that there is not a parallel state court proceeding, the undersigned is not persuaded. Plaintiffs' argument that Mrs. McGregor's complaint concerns only the priority of her interest, while the pending litigation in this court concerns the validity of her interest in light of Plaintiffs' claim that it was fraudulently transferred to her, is semantical at best. There can be no doubt that, unless Plaintiffs do not contest Mrs. McGregor's priority in state court, Plaintiffs must, and will, raise their fraudulent transfer claim as a compulsory counterclaim in order to show that Mrs. McGregor's mortgage and security interest are not valid and are therefore not entitled to priority over Plaintiffs' judgment lien. *See, e.g., Nat'l Council on Compensation Ins., Inc. v. Caro & Graifman, P.C.*, 259 F. Supp. 2d 172, 179 n.2 (D. Conn. 2003) (remarking that, where pending federal suit sought declaratory judgment regarding distribution of escrow funds while state court action sought a declaratory judgment as to priority of a mortgage or a judgment lien, "a determination regarding the validity of C & C's mortgage must be made before considering which lien has priority").[7] Moreover, to the extent that Plaintiffs are arguing that Mrs. McGregor's state court action is not parallel for *Colorado River* purposes because Defendant is not a party to that suit, the undersigned notes that this matter involves substantially the same parties because, in order to obtain the relief Plaintiffs seek, they are explicitly requesting that the court "add" or "join" Mrs.

---

[7] Notably, the District Court in *Caro & Graifman* considered the competing claims and issues in state and federal court only in conjunction with its evaluation of one of the *Colorado River* abstention factors, namely, whether the state court proceeding could adequately protect the rights of the party contesting abstention. 259 F. Supp. 2d at 178-79 n.2. There does not appear to be any determination by the court that, despite that "the validity of C & C's mortgage" was not a direct issue before the state court, the state court proceeding was not a parallel proceeding since the state court was tasked with resolving the priority of the relative liens and a "determination regarding the validity [of one lien] must be made before considering which lien has priority." *Id.*

McGregor as a defendant in this matter and, as a practical matter, Defendant will be a party to any fraudulent transfer counterclaim which might be brought in state court.[8]

Concluding, then, that Mrs. McGregor's state court action is indeed a parallel proceeding, the court must consider whether the "judicial administration" factors described above warrant abstention in this instance. The first factor is whether this court or the state court has assumed jurisdiction over the *in rem* property at issue. The undersigned's understanding is that neither this court nor the state court has yet assumed jurisdiction over the property. As such, this factor is neutral and, considering the heavy bias the court is to entertain when weighing the *Colorado River* factors, this factor weighs in favor of exercising jurisdiction.

The second factor is the relative inconvenience of the federal forum. This factor focuses "primarily on the physical proximity of the federal forum to the evidence and witnesses . . . ." *Ambrosia Coal*, 368 F.3d at 1332. Defendant asserts that "the Macon County Circuit Court is more convenient for, and has a greater connection to, the parties" because Plaintiffs' "original complaint arose out of actions relating to the Plaintiffs' employment at VictoryLand in Macon County and the Mortgaged Property which the Plaintiffs seek to execute on is located in Macon County." Pls.' Br. (Doc. 186) at 5. Although Plaintiffs make numerous arguments about why the state court forum is inconvenient because it is "cumbersome" and would force them into a "procedural quagmire," there is no disputing Defendant's contention that Macon County is, minimally, where the Plaintiffs were employed when their federal causes of action arose and is also where the land which is the subject of the mortgage which was supposedly fraudulently transferred to Mrs. McGregor is situated. However, given the proximity of Macon County to the federal forum, the undersigned does not find that the federal forum is inconvenient and,

---

[8]  Plaintiffs appear to concede this point, arguing that Defendant "made the conveyances and will be a necessary party to the proceedings that decide that issue." Pls.' Br. (Doc. 205) at 10.

accordingly, this factor does not favor abstention.  *See Jackson-Platts*, 727 F.3d at 1141 ("The federal forum neighbors Polk County, Florida, where the state forum is located.  Hence, the federal forum and the state forum are equally convenient; this factor thus cuts against abstention.").

The third factor is the potential for piecemeal litigation.  This factor "does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious."  *Ambrosia Coal*, 368 F.3d at 1333.[9] Moreover, it "does not favor abstention when litigation is 'inevitably piecemeal.'"  *Jackson-Platts*, 727 F.3d at 1142 (quoting *Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1525 (11th Cir. 1984)).  Litigation is "inevitably piecemeal" where it will involve disparate legal theories and evidence in the two forums.  *Id.* at 1442-43.  *See also Daniel v. Cullman Cnty. Court Referral, LLC*, No. 5:15-cv-101-AKK, 2015 WL 3604210, *3 (N.D. Ala. June 8, 2015) (describing "inevitably piecemeal" litigation as occurring "where parties operate under disjunctive legal frameworks and must offer differing evidence and testimony").  Defendant asserts that this factor favors abstention because "the Plaintiffs and Mrs. McGregor will be litigating issues relating to the validity and priority of the Mortgage both here and in the Macon County Action."  Def.'s Mot. (Doc. 186) at 5.  Plaintiffs do not appear to contest

---

[9]   *Ambrosia Coal* takes a particularly narrow view of the scope of this factor, reversing a district court's decision to abstain which was based, the Eleventh Circuit summarized, on the fact that both the federal and state actions "deal with the validity of the Agreement."  368 F.3d at 1333.  The Circuit Court reasoned, "[o]n the district court's misguided reasoning, the third *Colorado River* factor would seemingly support abstention in every federal case that has a parallel state case.  If this mistaken approach were in fact the rule, defendants could always escape federal courts simply by filing parallel state lawsuits."  *Id.* Of course, in this instance, the parallel suit was not brought by the Defendant in this action, but was instead immediately initiated by a third party, Mrs. McGregor, when she learned  that Plaintiffs charged her with having participated in fraudulent transactions involving Defendant.  As such, *Ambrosia Coal*'s concern with forum manipulation by federal defendants is inapposite in this case.

Defendant's argument that, should both actions proceed, both the state and federal courts will be applying the same substantive law to the same relevant pool of facts.[10]

In the undersigned's view, this factor weighs in favor of abstention.  It is evident that if this litigation proceeds in both courts, with Plaintiffs alleging a fraudulent transfer under the Alabama Fraudulent Transfer Act in both courts, the litigants and the court will be "exposed to unnecessary inconvenience, expense, and the danger of needless duplication of effort."  *Daniel*, 2015 WL 3604210, *3.  *See also Amason & Assoc., Inc. v. Columbus Land Development, LLC*, No. 7:12-cv-2459, 2014 WL 467509, *12 (N.D. Ala. Feb. 5, 2014) ("Having the same factual claims in state and federal courts causes unnecessary inconvenience and expense and raises a distinct danger of duplicative, piecemeal litigation.  The more the two actions are alike, the more this is exacerbated.").  Likewise, should the state court determine that Mrs. McGregor's action is not abated, the parallel litigation could foreseeably result in the sort of "conflicting obligations that the *Colorado River* doctrine seeks to avoid."  *Daniel*, 2015 WL 3604210, *3.  Indeed, it is possible that Mrs. McGregor's state court action could be resolved in a manner that would moot the fraudulent conveyance issue in this court.  *See, e.g., SE Property Holdings, LLC v. Parks*, No. 14-cv-050, 2014 WL, *4 (S.D. Ala. July 24, 2014).  For these reasons, so long as Mrs. McGregor's action remains pending before the state court, the undersigned is of the conviction that the failure to abstain in this matter could result in piecemeal litigation.[11]

---

[10]   Rather, Plaintiffs appear to argue that this factor does not favor abstention because Mrs. McGregor's state court action is abated by this action under Alabama law.  *See* Pls.' Mot. In Opp. (Doc. 187) at 4.  Indeed, Plaintiffs have filed a motion to dismiss Mrs. McGregor's action under this theory.  However, abatement is an issue for the state court and is not relevant to this court's analysis of this factor.

[11]   Of course, should the state court determine that Mrs. McGregor's action should be dismissed pursuant to Alabama's law on abatement, then this factor, indeed the entire question of abstention, is mooted and this court may proceed free of such concerns.

The fourth factor is the order in which the respective fora obtained jurisdiction. "What matters is not so much the chronological order in which the parties initiated the concurrent proceedings, but the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier." *Jackson-Platts*, 727 F.3d at 1142 (internal quotation omitted). As discussed above, Plaintiffs first alleged a fraudulent conveyance and sought to "add" Mrs. McGregor as a defendant on November 12, 2014. The following day, November 13, 2014, Mrs. McGregor filed her parallel state court action. The undersigned is advised that Plaintiffs have filed a motion to dismiss Mrs. McGregor's action in state court, that Mrs. McGregor has responded in opposition, and that nothing further has transpired. *See* Pl.'s Br. (Doc. 205) at 14. In this court, there has only been a series of motions and briefs and a status hearing concerning the parties' filings. Neither the state court nor this court has progressed appreciably beyond the initial filings seeking to invoke the respective courts' jurisdictions over this issue. Assuming that Plaintiffs have indeed sufficiently invoked this court's ancillary jurisdiction for purposes of conducting a supplementary proceeding under Alabama's Fraudulent Transfer Act, which, as discussed above, is a tenuous assumption at this point, it is evident that this factor does not weigh considerably in one direction or the other. Neither court has progressed substantially on the respective issues and Plaintiffs are not entitled to significant credit in having raised the issue in federal court one day before Mrs. McGregor went to state court, especially considering that Mrs. McGregor had no reason to file anything anywhere, and could not have filed anything in federal court, to protect her interest until she is either made a party or, as happened here, her attorneys were directed to file something on her behalf before Plaintiffs' motion to add her as a defendant is adjudicated. As such, the undersigned finds that this factor is, at most, neutral on the question of abstention.[12]

---

[12]   And, of course, if Plaintiffs are unable to satisfy the court that Alabama law permits them to initiate a

The fifth factor is whether state or federal law will be applied. "[T]his factor favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve." *Jackson-Platts*, 727 F.3d at 1143. Apart from the procedural questions discussed above, the undersigned does not find, and Defendant does not appear to argue, that Alabama's Fraudulent Transfer Act is "particularly complex or best left for state courts to resolve." As such, this factor favors the exercise of jurisdiction by the federal court.

"The sixth and final factor concerns whether the state court can adequately protect the parties' rights." *Id.* This factor weighs in favor of or against abstention only "when one of the fora is inadequate to protect a party's rights." *Ambrosia Coal*, 368 F.3d at 1333. It is as to this factor that Plaintiffs appear to present their most forceful argument in favor of this court exercising jurisdiction. While Plaintiffs do not appear to argue that the state court is incapable of fairly deciding their fraudulent transfer claim and otherwise declaring their rights relative to Mrs. McGregor, they repeatedly point to numerous perceived procedural difficulties in having to prosecute their fraudulent transfer claim in the state courts:

> The class members who own the judgment in this case are not parties to the State Court proceeding until the state court certifies this as a class action. Plaintiffs' attorneys have not been appointed to represent the class by the State Court. Class representatives have not been appointed by the State Court. All the required procedures in State Court would be very cumbersome. Unless relief is granted in this case, that will certainly hinder and delay the collection of the judgment rendered by this Court. Unless this court exercises the jurisdiction to enforce the judgment, including the issue of fraudulent transfers, the Plaintiffs will be in a procedural quagmire.

---

supplemental proceeding to enforce a judgment against a third party, or that their Amended Motion to Join Patricia McGregor as Party Defendant (Doc. 183) is indeed sufficient under Alabama law for that purpose, then this factor will weigh heavily in favor of abstention if not render the question moot since Plaintiffs would not have sufficiently invoked this court's ancillary jurisdiction if the proceeding they are attempting to bring is not compliant with Alabama law.

Pls.' Br. (Doc. 195) at 6.  Plaintiffs argue that Mrs. McGregor's state court complaint "bristles with procedural difficulty," including that it names the Class representatives from this case as defendants but "was not filed as a class action and Mrs. McGregor has not undertaken to have the Class certified by the state court."  Pls.' Br. (Doc. 205) at 4.[13]  They assert that, "[i]n state court, whether the conveyance was fraudulent would be inextricably intertwined with the procedural defects of the complaint."  *Id.* at 5.  However, it is difficult to perceive how any asserted procedural defects of Mrs. McGregor's complaint will render the state court forum inadequate to protect Plaintiffs' rights.  Certainly, those defects, if actual, seemingly would cause a more abrupt termination of the state court litigation, not an ongoing proceeding leaving Plaintiffs unable to vindicate their claim in that court.  In any event, the purported procedural defects of Mrs. McGregor's complaint are matters plainly due to be addressed by the state court.

Elsewhere, Plaintiffs make clear that their preference for the federal forum is due to the perceived more "efficient procedure" available in federal court.  Pls.' Br. (Doc. 205) at 2.  But they do not explain how the perceived inefficiencies of the state forum render it "inadequate" to protect their interests as opposed to simply not favored.  They argue "this Court should not require the Class to seek the relief required for enforcement of the Court's judgment in the Circuit Court of Macon County and delay the collection of the judgment for the usual two-to-three-year period that it will take for there to be a resolution of the case in Macon County."  *Id.* at 15.  They further contend that any state court action could lead to lengthy and burdensome appeals in the state courts which will only delay the collection of their judgment.  *Id.* at 15.  Curiously, Plaintiffs do not acknowledge that, just as they would have in state court, Defendant or Mrs. McGregor will have appellate rights in any supplementary proceeding concerning

---

[13]   It should be noted, however, that none of these supposed procedural difficulties deterred Plaintiffs from filing their motion to dismiss Mrs. McGregor's action pursuant to Alabama's abatement statute.

alleged fraudulent transfers adjudicated in this court.  *See id.* at 17 ("If this Court rules that the mortgage and security interest are fraudulent conveyances, that will be the end of the matter."). It is manifest, however, that the lengthy appeals Plaintiffs portend can result in federal court just as easily as in state court.  While understanding of Plaintiffs' concerns with proceeding on this issue in state court, the undersigned finds no reason to believe that the state court is inadequate to protect Plaintiffs' rights.  As such, this factor is neutral at most.

As set forth above, in the undersigned's analysis of the relevant "judicial administration" factors, only one factor, the potential for piecemeal litigation, weighs considerably in favor of or against the exercise of federal court jurisdiction over this issue, and, in the undersigned's view, this factor weighs in favor of abstention.  As articulated above, if the state court determines that Mrs. McGregor's complaint is not abated, it is not difficult to imagine the two cases proceeding on parallel tracks with considerable duplication of effort by the parties and both courts.  There does not appear to be any dispute that the central issue raised by Plaintiffs—alleged fraudulent conveyances made by Defendant to Patricia McGregor—will be the fundamental question presented in both state and federal court.  Both courts will be required to conduct fact-finding proceedings with the same witnesses testifying about the same events.  Both courts will seek to apply the same Alabama laws to the facts adduced at such proceedings.  As such, this litigation will be inherently piecemeal.  More ominous, though, is the potential for conflicting rulings by the state and federal courts concerning the same subject matter, resulting in conflicting rights and obligations for the parties concerning the subject property.  This is the precise result which the *Colorado River* doctrine is intended to avoid, *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16; *Moorer*, 374 F.3d at 997, and this, more than any perceived inefficiencies of litigating in state court, is the "quagmire" which this court should seek to avoid.

On balance, none of the other relevant factors, which, as set out above, are mostly neutral, weigh as heavily on either side of the abstention question as does the potential for piecemeal litigation.  In the undersigned's view, this factor weighs sufficiently heavily on the side of abstention that it ultimately skews the analysis in favor of abstention.  The undersigned does not arrive at this belief lightly or without due concern for Plaintiffs' rights.  However, the undersigned also notes that, should the court abstain from deciding this issue out of deference to the ongoing state court proceeding, Plaintiffs are not foreclosed from all available federal process for enforcing their judgment.  Indeed, during the pendency of these motions, Plaintiffs have continued to conduct discovery on the assets of Defendant and, on August 20, 2015, filed thirteen separate applications for writs of garnishment seeking to collect Defendant's holdings at various banks.  *See* Docs. 208-20.  Simply put, federal court abstention of Plaintiffs' claim of fraudulent conveyance does not preclude Plaintiffs from their ongoing efforts to satisfy their judgment.  It merely affords Mrs. McGregor the opportunity to vindicate her name and property interests in her chosen forum while promoting judicial economy and comity with the state courts and avoiding potentially onerous and deleterious piecemeal litigation.

Furthermore, the issue before the court is not as simple as Plaintiffs have portrayed it to be.  Plaintiffs assert that the court "should not allow MCGP, which lost this case, and lost the appeal in this case, to dictate the venue for litigation pertaining to the collection of the judgment."  Pls.' Br. (Doc. 205) at 14.  However, Plaintiffs understate the implications of their current actions.  This is not an instance where Defendant filed a state court complaint in an effort to create grounds for federal court abstention or otherwise thwart or delay Plaintiffs' efforts.  *See, e.g., Ambrosia Coal*, 368 F.3d at 1333.  Rather, Plaintiffs charged Mrs. McGregor with having participated in and benefitted from illegal and fraudulent transactions, and she promptly

sought protection in state court when she was not a party to the federal proceeding in which Plaintiffs levied this very serious charge against her.  Certainly, Plaintiffs have the right, within the parameters of applicable law, to have their claims decided in the forum of their choosing. However, Mrs. McGregor, too, has a similar right to have her claims decided in the forum of her choosing.  Where these rights conflict, and the relevant parties have appealed to different fora, the court is placed in the difficult position of having to balance the relative interests and to reconcile, to the extent possible, the rights of all concerned.  The undersigned believes that, given the likelihood of piecemeal litigation flowing from Mrs. McGregor's ongoing state court action, and considering that, notwithstanding any stay of their claims of fraudulent conveyance as to the subject mortgage and security interests, Plaintiffs may continue their collection efforts against other property of Defendant while Mrs. McGregor's state court action proceeds, this court should abstain from deciding this issue to allow the state court a reasonable opportunity to determine the issues presented to it by Mrs. McGregor and the Plaintiffs' motion to dismiss.

Accordingly, the undersigned Magistrate Judge RECOMMENDS as follows:

a.     that Defendant's Motion to Quash, or in the Alternative, to Stay Writ of Garnishment (Doc. 177) be DENIED;

b.     that Plaintiffs' Amended Motion to Join Patricia McGregor as Party Defendant be STAYED pending the state court's adjudication of Mrs. McGregor's declaratory judgment action and Plaintiffs' motion to dismiss same; and

c.     that Defendant's Motion to Stay Motion to Join Patricia McGregor as a Party Defendant and Motion for Writ of Execution on Fraudulently Conveyed Assets (Doc. 186) be GRANTED; and

d.      Plaintiffs' Verified Application for Writ of Execution (Doc. 189) be STAYED pending the state court's adjudication of Mrs. McGregor's declaratory judgment action and Plaintiffs' motion to dismiss same.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **September 15, 2015**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 2nd day of September, 2015.


/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE