IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

JUDY WEEKES-WALKER, *et al.*,      )
                                   )
              Plaintiffs,          )
                                   )
     v.                            )   CASE NO. 3:10-CV-895-WKW
                                   )
MACON COUNTY GREYHOUND             )
PARK, INC.,                        )
                                   )
              Defendant.           )

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs' motion for reconsideration.  (Doc. # 257.) Upon consideration of the motion, the court concludes that the motion is due to be denied for lack of jurisdiction or, alternatively, for failure to assert a cognizable or meritorious ground for relief.

## I.   FACTS[1] AND PROCEDURAL HISTORY

Plaintiffs are a class of former employees of Defendant Macon County Greyhound Park.  On October 22, 2010, Plaintiffs filed a complaint pursuant to the Worker's Adjustment and Retraining ("WARN") Act, 29 U.S.C. § 2101, *et seq*., after a series of "mass layoffs" or "plant closings" at Defendant's electronic gaming facility, Victoryland, in 2010.

---

[1] The facts set forth here are gleaned from the record as it currently stands and do not represent the court's ultimate factual findings.

On September 27, 2012, Defendant executed a promissory note in the amount of $1,091,849.88, the total amount of several loans issued prior to that date from Patricia McGregor[2] to Defendant.  (Doc. # 177-1.)  Also on September 27, 2012, Defendant executed a mortgage and assignment of rents and leases as to certain real property ("the timber parcel"), securing not only the promissory note, but also any future indebtedness for loans from Patricia McGregor.  (Doc. # 177-1.)  On February 5, 2013, Patricia McGregor's mortgage was recorded in the probate office in Macon County, Alabama.  (Doc. # 177-1 at 5.)  Patricia McGregor made several subsequent loans to Defendant, the last of which was made on April 14, 2014.  (Doc. # 177-1 at 3.)

On July 22, 2014, final judgment in this case was entered against Defendant and in favor of Plaintiffs in the amount of $2,734,851.63, to include Plaintiffs' monetary judgment, attorneys' fees, costs, and interest.  (Doc. #168).  In the fall of 2014, Lower Tallapoosa Timber was hired to cut some timber on the timber parcel.

On October 23, 2014, Plaintiffs filed with the Clerk of the Court a verified application for writ of garnishment (Doc. # 169) seeking to have garnished from Lower Tallapoosa Timber any debt or effects owed to or possessed from Defendant.  On October 27, 2014, the writ of garnishment (Doc. # 170) was issued

---

[2] Patricia McGregor is the wife of Defendant's primary shareholder, Milton McGregor.

by the Clerk, and it was served on Lower Tallapoosa Timber on November 5, 2015.  (Doc. # 173,)

On October 30, 2014, Plaintiffs recorded the judgment in this case in the probate office in Macon County, Alabama.  (Doc. # 177-1 at 36.)

On November 12, 2014, Lower Tallapoosa Timber filed its answer (Doc. # 175) to the writ of garnishment, disclosing that it had in its possession non-exempt property belonging to Defendant consisting of "timber stumpage" of unspecified value.

On November 12, 2014, Plaintiffs filed a "motion to file under seal." (Doc. # 174.)  Attached to the motion to file under seal were (1) a motion to join Patricia McGregor as a party defendant and motion for writ of execution of "asset(s) fraudulently conveyed," and (2) a verified application for writ of execution on certain property in Defendant's possession.  (Doc. # 174-1; Doc. # 174-2.)  On the face of the November 12, 2014 filing, the verified application for writ of execution did not appear to be related to the motion to add Patricia McGregor as a party defendant and for writ of execution on allegedly fraudulently conveyed assets.[3]

_____

[3] In the verified application for writ of execution, Plaintiffs sought a writ of execution on (1) a number vehicles that were in Defendant's "possession," and (2) certain real property to which Defendant allegedly held title.  The list of vehicles Plaintiffs provided did not state whether the vehicle titles were held in Defendant's name, but the list reveals that the titles to the vast majority of them were issued between November 22, 1985 and September 27, 2010, prior to the filing of this lawsuit.  Thus, the list does not reasonably appear to be a list of vehicles that were titled over to Patricia McGregor to avoid a judgment in this suit.  The document describing the real property subject to execution was apparently an attachment to a deed that was recorded

The motion to add Patricia McGregor alleged that Defendant fraudulently transferred "personal and real property" to Patricia McGregor. Plaintiffs provided no details about the date or substance of the allegedly fraudulent transfers, and Plaintiffs gave no information identifying the personal and real property so transferred. The certificate of service for Plaintiffs' November 12, 2014 filing stated only that it was served on Defendant's counsel of record. The filing contains no indication that it was served on Patricia McGregor.

On November 13, 2014, Patricia McGregor filed a complaint for declaratory judgment in the Circuit Court of Macon County, Alabama. (Doc. # 177-1 at 41.) She sought a declaration that her mortgage on the timber parcel is a valid, enforceable lien and that, under Alabama law, her mortgage primes the judgment obtained by Plaintiffs in this action because the certificate of judgment was not filed by Plaintiffs in Macon County until October 30, 2014.

On November 18, 2014, Defendant filed a motion to quash or, in the alternative, to stay the writ of garnishment issued to Lower Tallapoosa Timber. (Doc. # 177.) Patricia McGregor argued that the timber stumpage was harvested

---

on May 13, 2008. A copy of the deed to the real property was not included as an attachment. Nothing in the November 12, 2014 filing connected that real property to Patricia McGregor. However, as Macon County Greyhound Park's November 18, 2016 filing subsequently revealed, the real property that was the subject of the application for writ of execution happened to be the same timber parcel that was mortgaged to Patricia McGregor in September 2012 and that Lower Tallapoosa Timber had been hired to harvest. (*Compare* Doc. # 177-1 at 33-34 (property description) *with* Doc. # 174-6 (property description)).

from the timber parcel and that she, not Plaintiffs, was entitled to the proceeds[4] of the timber stumpage because her mortgage primes the judgment in this case.  (Doc. # 177.)

On November 20, 2014, Plaintiffs filed an amended motion to join Patricia McGregor as party defendant.  (Doc. # 183.)  In the amended motion, Plaintiffs sought to have Patricia McGregor added as a party defendant in this action for the purpose of obtaining a declaration from this court that the mortgage was fraudulently conveyed to Patricia McGregor to avoid the judgment in this case in violation of the Alabama Fraudulent Transfer Act, Ala. Code 1975 § 8-9A-1, *et seq*. Plaintiffs further sought "a writ of execution on the asset(s) of [Defendant], free and clear of any claims of Patricia McGregor."  (Doc. # 183 at 7.) The amended motion did not seek to have set aside any other transfers of specific real or personal property to Patricia McGregor.

On September 2, 2015, the United States Magistrate Judge issued a Report and Recommendation that the court should stay issuance of execution on the timber stumpage pending the outcome of the state court case.  On September 30, 2015, the court entered an order adopting the recommendation and finding Plaintiffs had failed to invoke the court's ancillary jurisdiction over its request to have the fraudulent transfer set aside.  (Doc. # 256.)  This conclusion was based on

---

[4] The value of the timber stumpage proceeds is not reflected in the record.

the fact that AUFTA, Ala. Code 1975 § 8-9A-7, requires the filing of "an action" to establish the fraudulent transfer.  (*See* discussion, Doc. # 256.)

On October 8, 2015, Plaintiffs filed a motion to reconsider, (Doc. # 257), arguing that, under Ala. Code § 8-9A-7(b), a court may join a third party and set aside a transfer as fraudulent.  Ala. Code § 8-9A-7(b) provides:

> If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

Ala. Code § 8-9A-7(b).

On October 26, 2015, Plaintiffs filed a notice of appeal from the September 2, 2015 Order, depriving this court of jurisdiction over the motion to reconsider. No opinion has been issued by the Eleventh Circuit Court of Appeals in the interim. The motion to reconsider will be denied for lack of jurisdiction, or, alternatively, for failure to seek relief on a ground contemplated by Rule 60 of the Federal Rules of Civil Procedure.

## II.   DISCUSSION

The Federal Rules of Civil Procedure do not provide for "motions for reconsideration."  However, Rule 60(b) provides for relief from "a final judgment, order, or proceeding" on the following grounds:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Subsection 60(b)(6)'s allowance of reconsideration for "any other reason that justifies relief" is an extraordinary remedy that may invoked only upon a showing of "exceptional circumstances" not covered under subsections 60(b)(1)-(5). *United States v. Real Prop. & Residence Located at Route 1, Box 111, Firetower Rd.*, 920 F.2d 788, 791 (11th Cir. 1991); *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). Rule 60(b)(6) generally does not apply to factual or legal arguments that were or could have been raised in the first instance. *See Rossi v. Troy State Univ*., 330 F. Supp. 2d 1240, 1249 (M.D. Ala. 2002), *aff'd*, 64 F. App'x 743 (11th Cir. 2003).

Plaintiffs' motion for reconsideration does not fall under any of the provisions of Rule 60(b). Plaintiffs make no attempt to show "exceptional

circumstances," and the motion merely raises two legal arguments that were or could have been raised in the first instance.

First, Plaintiffs argue that *C-Staff, Inc. v. Liberty Mutual Insurance Co.*, 571 S.E. 2d 383 (Ga. 2002), and *Reyes-Fuentes v. Shannon Produce Farm, Inc*., No. 6:08-CV-59, 2012 WL 3562399, at *6 (S.D. Ga. Aug. 13, 2012) – cases mentioned in the Report and Recommendation of the Magistrate Judge (Doc. # 241 at 6-9) – are inapposite.   This argument could have and should have been raised in Plaintiffs' objections.   In fact, in their objections, Plaintiffs relied on *Reyes-Fuentes*, (Doc. # 253 at 17), and the court addressed that argument in the order adopting the Recommendation.  (Doc. # 256 at 3-5.)  In any event, the court finds no merit in Plaintiffs' argument that the court misconstrued or misapplied *C-Staff* or *Reyes-Fuentes*.

Second, Plaintiffs raise a new legal argument that was available to them prior to entry of the order adopting the Recommendation; namely, Plaintiffs contend that a June 21, 2005 Order in *McLane Foodservice, Inc. v. Wolverine Pizza, LLC*, No. 3:03-CV-0412-G Doc. # 87, 205 U.S. District LEXIS 12110 (N.D. Tex. June 21, 2005), holds that, under a Texas statute similar to the Alabama statute at issue here, a party may, in conjunction with a postjudgment attempt to levy execution on a fraudulently transferred asset, join a nonparty and move for an order setting aside a fraudulent transfer.   Contrary to Plaintiffs' argument,

8

however, the validity of joining a nonparty to set aside a fraudulent transfer was not raised or decided in the *McLane Foodservice* opinion, nor did the judgment creditors in that case attempt to join non-parties by motion for that purpose. *McLane Foodservice* is inapposite.

*McLane Foodservice* was decided by a federal district court in 2005. A later Texas appellate court case, *Kennedy v. Hudnall*, 249 S.W.3d 520, 525-26 & nn. 12-13 (Tex. App. 2008),[5] touches on the relevant issues, and, to the extent that *Kennedy* contains affirmative holdings on those issues, *Kennedy* is not inconsistent with this court's conclusions in the order adopting the Recommendation. *See Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817, 820 (11th Cir. 1985) ("[W]here, as in the instant case, the state supreme court has not addressed the issue, a federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." (citations and internal quotation marks omitted)).

Specifically, in *Kennedy*, the Texas Court of Appeals held that "since no action for relief was filed independently of the original suit in which the money judgment was granted," an attempt to levy execution on a fraudulently transferred

---

[5] The parties did not bring *Kennedy* to the attention of the court. The court discovered the case on its own in the process of evaluating the merits of Plaintiffs' argument regarding the state of Texas law.

asset was not "an action for relief against a [fraudulent] transfer or obligation" under Tex. Bus. & Com. Code Ann. § 24.008(a).[6]  *Kennedy*, 249 S.W.3d at 525. Rather, the matter was "an order incident to execution and levy under" Tex. Bus. & Com. Code Ann. § 24.008(b).  The court observed that "a judgment creditor may seek execution against an allegedly fraudulent transfer under subsection (b) without filing a separate suit or first having the question of fraud determined" and that, "although we see nothing in Section 24.008(b) which authorizes a court to make a determination whether a fraudulent transfer has taken place, we take no position at this point whether a court acting solely under subsection (b) without a separate suit would have the ability to actually or impliedly avoid the [allegedly fraudulent] conveyance."  *Kennedy*, 249 S.W.3d at 525 nn. 12-13. Thus, contrary to Plaintiffs' representations, Texas law is not settled with respect to whether under Tex. Bus. & Com. Code Ann. § 24.008(b),[7] a judgment creditor may seek to join a nonparty and have the fraudulent transfer set aside in a postjudgment proceeding seeking to levy execution on a fraudulently transferred asset.  At most, *Kennedy*

---

[6] Tex. Bus. & Com. Code Ann. § 24.008(a) is worded similarly to Ala. Code 1975 § 8-9A-7(a).  Tex. Bus. & Com. Code Ann. § 24.008(b) is worded similarly to Ala. Code 1975 § 8-9A-7(b).

[7] The *Kennedy* court made clear that § 24.008(a) "does not allow for" litigation of fraudulent transfer in the original suit for damages because § 24.008(a) "requires a separate lawsuit for that purpose."  *Kennedy v. Hudnall*, 249 S.W.3d at 522.  To the extent that Plaintiffs may argue that they may litigate the fraudulent transfer issue in this action under the comparable provisions of Ala. Code 1975 § 8-9A-7(a), *Kennedy* contradicts that argument.

telegraphs doubts that fraudulent transfers can be set aside by joining nonparties in supplementary proceedings solely under subsection (b) – doubts which, if anything, undermine Plaintiffs' arguments.

To say that the law is confusing on this point is understatement of the highest order.  Note, for instance, the contradictions in American Jurisprudence's treatment of the topic: 37 Am. Jur. 2d Fraudulent Conveyances and Transfers § 117 ("[S]upplementary relief in aid of execution cannot be utilized to adjudicate the title of property alleged to have been fraudulently conveyed since only property the title to which is clearly in the judgment debtor is subject to the terms of the rules governing such supplementary relief."); 37 Am. Jur. 2d Fraudulent Conveyances and Transfers § 120 ("In most jurisdictions, a judgment creditor may disregard a fraudulent conveyance; levy upon the property conveyed, whether personal or real, as though the conveyance did not exist; and cause it to be sold under execution without bringing direct suit to set aside the conveyance, leaving the issue of fraudulent transfer for later determination. This is the rule under the Uniform Fraudulent Transfer Act and under the Uniform Fraudulent Conveyance Act." (footnotes omitted)).   The first section, § 117, disclaims the use of supplementary proceedings to adjudicate the title to property.  The second section, § 120, says the problem (of the creditor not having sure title to the property) can be resolved by ignoring the allegedly fraudulent transfer and proceeding to execution

sale of another person's property interest, leaving the issue of fraudulent transfer for later determination.  Which is it?  And how so?

The fault lies in the language of subsection (b):  "If a creditor has obtained a judgment on a claim against the debtor, the creditor, *if the court so orders*, may levy execution on the asset transferred or its proceeds." Ala. Code § 8-9A-7(b) (emphasis added).  No competent court would "so order" as to the asset without due process notice to the owner of record and a trial, and state legislatures and uniform act writers would know that if they ever practiced law for a day – unless, of course, the "court" referenced in subsection (b) is the court in the action for relief under AUFTA (*i.e.* a new proceeding with the requisite due process) to establish the fraudulent transfer and recover ownership in the debtor/transforor. *See* Ala. Code § 8-9A-7(a) (providing remedies available to creditors in "an action for relief against a transfer under this chapter").[8]  What has been tried by the court is the claim of the creditor against the debtor – *not* the title to any real or personal property the debtor has, or had, that may satisfy the claim.  In one careless phrase,

---

[8] The notes to the Uniform Fraudulent Transfer Act hint at historical precedent under a previous uniform statute for a procedure by which the judgment creditor may obtain judgment and a writ of execution returned unsatisfied before proceeding in equity to set aside the transfer. Alternatively, the creditor might treat the conveyance as a nullity and levy attachment in spite of it; in such cases, the creditor often found it necessary to indemnify the sheriff for the risk of erroneous seizure.  *See* Uniform Fraudulent Transfer Act § 7 cmts. 5-6, and cases cited therein. Even if those procedures are still available under Ala. Code § 8-9A-7(b), neither of them involves the addition of the third party transferee to the original action via a postjudgment motion to establish the fraudulent transfer, as Plaintiffs seek to do here.

the uniform statute, adopted by Alabama without, apparently, a thought, flips the law of *in rem* property on its centuries-old head.  There can be no greater property right in English common law than the requirement that private property may not be seized by the government or anyone else without due process of law.  In this very context, that means notice, a claim compliant with the rules of civil procedure and common law, adequate time to conduct discovery, prepare a defense, and engage in motion practice, and a trial, with attendant rights to appeal – in short, a separate action for the current owner of the property to defend that ownership against claims of fraud.  One flippant phrase in subsection (b) cannot undo those ancient property rights.[9]

In any event, the court lacks jurisdiction to rule on the motion because Plaintiffs' motion does not fall under any of the provisions of Rule 60. Alternatively, if Plaintiffs' motion for reconsideration could be construed as a "motion for relief from a court order" within the meaning of Rule 60 or a "motion for relief" within the meaning of Rule 62.1 of the Federal Rules of Civil

---

[9] Adding to the confusion is the former difference in proceedings at law, as here (obtaining a money judgment), and equity (the traditional vehicle to resolve property title issues). The distinction between law and equity have technically been abolished in Alabama law.  *See* Ala. Rule Civ. P. 2 ("There shall be one form of action known as the 'civil action.'"); *Poston v. Gaddis*, 335 So. 2d 165, 167 (Ala. Civ. App. 1976) ("With the adoption of the Alabama Rules of Civil Procedure, the common law forms of actions at law and in equity were abolished. Actions and defenses of a legal and equitable nature may now be joined and intermingled in the one form of 'Civil Action.'").  Nevertheless ancient cases establish procedures that apply to levy and execution despite modern uniform acts.

Procedure,[10] the motion is due to be denied on grounds that it raises substantively meritless arguments that were or should have been raised prior to entry of the Order adopting the Recommendation. *See Doe ex rel. Doe v. Bush*, 261 F.3d 1037, 1064 (11th Cir. 2001) (noting that, "as a general rule, the filing of a notice of appeal divests the district court of jurisdiction over those aspects of the case that are the subject of the appeal"); Fed. R. Civ. P. 60(b) (listing grounds for relief from a court order); Fed. R. App. P. 4(a)(4) (listing Rule 60 motions among six motions that, if filed within the relevant time limit, suspend the effect of a notice of appeal filed before or after the motion is filed until disposition of the last such motion).

### III.   CONCLUSION

Accordingly, it is ORDERED that Plaintiffs' motion for reconsideration (Doc. # 257) is DENIED.

DONE this 7th day of March, 2017.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[10] Rule 62.1 provides that a court "may" defer consideration of, deny, or indicate a willingness to grant a "motion for relief . . . that the court lacks authority to grant because of an appeal that has been docketed and is pending."

14